Case: 03-23388   Doc: 615   Filed: 01/26/07   Page: 1 of 6

FILED
Jan 26 2007
11:09 AM
US Bankruptcy Court
Western District Of Oklahoma

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re<br><br>AMERIVISION COMMUNICATIONS, INC.<br>d/b/a LIFELINE COMMUNICATIONS,<br><br>Reorganized Debtor. | § Case No. 03-23388 NLJ<br>§<br>§ (CHAPTER 11)<br>§<br>§<br>§ |
| AMERIVISION COMMUNICATIONS, INC.<br>d/b/a LIFELINE COMMUNICATIONS,<br><br>Plaintiff,<br><br>v.<br><br>XYANT TECHNOLOGY, INC.<br><br>Defendant. | § Adversary No. 05-01371<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**MOTION TO APPROVE COMPROMISE AND SETTLEMENT**
**AGREEMENT WITH XYANT TECHNOLOGY, INC.**

**TO THE HONORABLE NILES JACKSON, U.S. BANKRUPTCY JUDGE:**

AmeriVision Communications, Inc. d/b/a/ Affinity 4 ("***Reorganized Debtor***") and Xyant Technology, Inc. ("***Xyant***"), file this Motion to Approve Compromise and Settlement Agreement with Xyant Technology, Inc. (the "***Motion***") and in support thereof represents as follows:

**I. STATEMENT OF JURISDICTION**

1. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) because it relates to the chapter 11 case of the Debtor administered in this Court under Case No. 03-23388 NLJ. This adversary proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(f).

**II. STATEMENT OF FACTS**

Page 1

2. Prior to December 7, 2003 (the **"Petition Date**") the Debtor operated a long distance resale business.

3. Prepetition the Defendant provided goods and/or services to the Reorganized Debtor.

4. During the ninety (90) days immediately preceding the Petition Date (the "**Preference Period**"), the Reorganized Debtor transferred not less than $34,460.00 to Defendant (the "**Transfers**").

5. The Transfers were made to the Defendant on account of an antecedent debt.

6. On December 7, 2005, Reorganized Debtor filed the above-referenced adversary proceeding in an attempt to recover the Transfers.

7. After substantial negotiations, the Reorganized Debtor and Xyant have agreed that in lieu of a costly litigation to recover the Transfers paid to Xyant, a settlement is appropriate. The terms of the settlement are attached hereto in the Settlement Agreement marked as **Exhibit "A."** In essence, Xyant agrees to pay Reorganized Debtor $10,000.00 in consideration for the settlement of the preference claim. All other claims and causes of action will be released.

### III. APPROVAL OF THE COMPROMISE AND SETTLEMENT AGREEMENT IS IN THE BEST INTERESTS OF THE ESTATE

8. The Bankruptcy Court derives its authority to approve compromise and settlement agreements from Bankruptcy Rule 9019(a).[1] The decision of whether to approve a particular compromise lies within the discretion of the trial judge.[2] However, the Bankruptcy Judge must exercise his discretion in an informed and reasoned manner:

---

[1] *See Matter of Aweco, Inc.*, 725 F.2d 293, 297 (5th Cir. 1984), *cert. den*. 469 U.S. 880, 105 S. Ct. 244 (1984).

[2] *Aweco*, 725 F.2d at 297 (citing *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602-03 (5th Cir.

> When invoked as a guide to judicial action [discretion] means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.[3]

The central question is whether the compromise or settlement is fair, reasonable and adequate based on the facts and circumstances before the Court.[4]

9. The benchmark for determining the propriety of a bankruptcy settlement is always whether the settlement is in the best interests of the estate.[5] In deciding whether a settlement agreement serves the estate's best interests, courts have fashioned guiding principles for this consideration including:

(1) the probability of success in the litigation, with due consideration for uncertainty in fact and law;

(2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay;

(3) the difficulties that may be encountered in collecting any judgment that might result;

(4) whether the settlement was the product of arm's length negotiations;

(5) whether the settlement is collusive;

(6) whether the proponents have experienced counsel and the litigation has been a "fair fight;"

---

1980)) *See also, In re Albert Harris,* 313 F.2d 447, 449 (6th Cir. 1963); *In re Hibbard Brown & Co. Inc.,* 217 B.R. 41 (Bankr. S.D.N.Y. 1998); *Bell & Beckwith,* 77 B.R. 606, 611, (Bankr. N.D. Ohio 1987) *order affm'd* 97 B.R. 472 (N.D. Ohio 1987).

[3] *Aweco*, 725 F.2d at 298.

[4] *Hibbard Brown*, 217 B.R. at 45, (*citing In re Drexel Burnham Lambert Group,* 960 F.2d 285, 292-293, (2nd Cir. 1992), *cert. disms'd* 506 U.S. 1088, 1123 S. Ct. 1070 (1993)).

[5] *Matter of Energy Co-op, Inc.*, 886 F.2d 921, 926 (7th Cir. 1989), (citing *In re American Reserve Corp.* 841 F.2d 159, 161 (7th Cir. 1987); *In re A & C Properties*, 784 F.2d 1377, 1380, 1381 (9th Cir. 1986)); *In re Barton,* 45 B.R. 225 (Bankr. M.D.Tenn. 1984); *Bell & Beckwith*, 77 B.R. at 611.

(7)   whether there has been sufficient discovery of the underlying facts and claims to enable counsel and the parties to act intelligently;

(8)   the number of objecting parties and their relative interests;

(9)   the paramount interest of creditors with a proper preference for their reasonable views; and

(10)  all other factors bearing on the wisdom of the compromise.[6]

The Bankruptcy Court's duty is to determine whether the value to the estate of the proposed settlement is reasonably equivalent to the value of the potential claim that the estate gives up in the settlement.[7] The Court need not conduct a mini-trial to determine the probable outcome of litigation, but need only apprize itself of the relevant facts and law so that it can make an informed and intelligent decision.[8] The Agreement negotiated between the Reorganized Debtor and Xyant meets these requirements and is in the best interest of the estate.

A.   <u>Whether the Settlement Was the Product of Arm's Length Negotiations, Whether the Settlement is Collusive, and Whether the Proponents have Experienced Counsel and the Litigation has been a "Fair Fight."</u>  The Reorganized Debtor and Xyant are both represented by experienced counsel. The proposed Agreement is the product of extensive efforts and arm's length negotiations by the parties. Given the history of this case, no serious suggestion that one party was unfairly disadvantaged or that the proposed settlement is collusive can be made.

B.   <u>Whether There Has Been Sufficient Discovery of the Underlying Facts and Claims to Enable Counsel and the Parties to Act Intelligently</u>. There have been negotiations and exchange of

---

[6] *See, e.g., Jackson Brewing Co.* 624 F.2d at 602-03; *Energy Co-op*, 886 F.2d at 827; *In re Texaco, Inc.,* 84 B.R. 14 (Bankr. S.D.N.Y. 1998).

[7] *Energy Co-op*, 886 F.2d at 929; *New York, N.H. & H.R. Co.*, 632 F.2d 955, 960 (2nd Cir. 1980).

[8] *Official Committee of Unsecured Creditors v. Cajun Electric Power Cooperative, Inc. (In re Cajun Electric Power Cooperative, Inc.)* 119 F.3d 349, 356 (5th Cir. 1997), (*citing LaSalle National Bank v. Holland (In re American Reserve Corp.)* 841 F.2d 159,163 (7th Cir. 1987), *Depositer,* 36 F.3d at 586 (7th Cir. 1994).

information between the parties preceding the Agreement. Neither of the parties to the Agreement have acted without detailed knowledge of the assets, liabilities and overall financial circumstances and realities of this case and have each acted intelligently with regard to the best interests of the bankruptcy estate.

    C.    <u>All other factors bearing on the wisdom of compromise</u>. The benefits stemming from the Agreement are substantial. The Agreement was reached in the spirit of cooperation and compromise between the Reorganized Debtor, and Xyant.

    **WHEREFORE, PREMISES CONSIDERED,** the Reorganized Debtor requests that this Court approve the compromise and settlement proposed herein, authorize the Reorganized Debtor to execute the Agreement in substantial form as that attached hereto as **Exhibit "A."**

Dated: January 23, 2007

**PHILLIPS MCFALL MCCAFFREY MCVAY & MURRAH, P.C.**

By: *s/ Vickie J. Buchanan*
Shannon Emmons, OBA# 14272
Vickie J. Buchanan, OBA #18345
One Leadership Square, 12th Floor
211 N. Robinson
Oklahoma City, Oklahoma 73102
Telephone: 405.235.4100
Facsimile: 405.235.4133

- AND -

**POWELL GOLDSTEIN LLP**

By: */s/ Keith Aurzada*
Keith Miles Aurzada, TBA 24009880

2200 Ross Avenue, Suite 3200
Dallas, Texas 75201
Telephone: 214.721.8000
Facsimile: 214.721.8100

COUNSEL TO THE REORGANIZED DEBTOR

### CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the above-referenced pleading upon the following persons by causing copies of the same to be mailed by United States first class mail, postage prepaid.

>Jackie L. Hill, Jr.
>2800 Oklahoma Tower
>210 Park Avenue
>Oklahoma City, OK  73012

Dated: January 25, 2007

*s/ Vickie J. Buchanan*